IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE STURGE-WEBER FOUNDATION**<br>    1240 Sussex Turnpike, Ste. A<br>    Randolph, NJ 07869<br><br>            **Plaintiff,**<br><br>        -v-<br><br>**LINDA M. SPRINGER**<br>in her official capacity as<br>Director of the United States Office<br>of Personnel Management<br>1900 E Street, N.W.<br>Washington, D.C. 20415-0001,<br><br>            **Defendant.** | Civil Action No._____ |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**I.     STATEMENT OF FACTS**

   **A.     The Combined Federal Campaign**

The Combined Federal Campaign ("CFC") was established by President Kennedy in 1961 as the exclusive means for federal employees[1] to make charitable contributions at their places of work.  *See* 5 C.F.R. § 950.102 (a); *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988).  In 2002, nearly four million federal civilian and postal employees and military personnel were provided the opportunity to contribute to the charities of their choice.  Federal employees and military personnel donated approximately $237

---

[1] Armed forces personnel and postal service employees, as well as civil servants participate in the CFC, which is conducted annually.

million to the 2002 CFC. *See* OPM News Release, May 22, 2003.

The Director of the Office of Personnel Management ("Director") supervises the CFC. 5 C.F.R. § 950.102 (c). The Director renders all final decisions regarding disputes. The Director establishes and maintains an official list of local CFCs and the geographical areas they cover. The Director also designates Local Federal Coordinating Committees ("LFCCs") which conduct and supervise the local CFC in particular communities. *See* 5 C.F.R. §§ 950.103 (a) and (b); *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988).

Each year the LFCCs establish a six (6) week period during which federal employees may be solicited for charitable contributions. The solicitations may not begin before September 1 and may not extend beyond December 15. Contributions are made either directly to the CFC or are withheld from participating employees' paychecks. 5 C.F.R. § 950.103.

Each year the Director compiles a list of charities eligible to participate nationally in all local campaigns ("National List"). Each LFCC is required to include the National List charities in the CFC brochures prepared and distributed to eligible federal employees in accordance with CFC regulations. Upon receiving the brochure, federal employees receive a pledge card and identify charities they wish to support. 5 C.F.R. §§ 950.105 and 950.201.

A charitable organization wishing to be included in the CFC applies annually to the Director. An organization seeking inclusion on the National List, *inter alia*, must certify: (a) it provides services or benefits in at least fifteen (15) states or a foreign country over the three year period immediately preceding the campaign year involved; and (b) it is recognized by the Internal Revenue Service as a tax-exempt organization under § 501(c)(3) of the Internal Revenue

Code of 1986 ("Code").  5 CFR § 950.202.[2]

The Director is required to issue the National List to all LFCCs each year.  As noted in Exhibit I to the complaint, the Director intends to distribute the National List on or about July 31, 2006 *via* display on the OPM web site.  The web site will contain the names of and information about charities included in the National List.

To the National List, LFCCs are permitted to add local charities, in accord with a local application process.  The LFCCs do not have discretion to remove a National List charity from the CFC.  The decision by the Director is final as to which charities are admitted to the CFC as National List charities.

Upon information and belief, shortly after July 31, 2006, it is anticipated the LFCCs will commence the printing of brochures for distribution to federal employees.[3]  These brochures must contain the names of and information about National List charities. (Local charities, *but not National List charities*, will vary from brochure to brochure, depending on the region covered by the local federal campaign.)

---

[2] Section 950.202 states that organizations seeking national list eligibility must "(a) Certify that it [sic] provides or conducts real services, benefits, assistance, or program activities, in 15 or more different states or a foreign country over the 3 year period immediately preceding the start of the year involved.  The requirement cannot be met on the sole basis of services provided through an "800" telephone number or by sending materials via the U.S. Postal Service or a combination thereof.  A schedule listing those states (minimum 15) or the foreign countries (minimum 1) where the program activities have been provided and a detailed description of the activities in each state or foreign country must be included with the application.  While it is not expected that an organization maintain an office in each state or foreign country, a clear showing must be made of the actual services, benefits, assistance or activities provided in each state or foreign country."

[3] The exact printing dates will vary somewhat from one local LFCC to another.

      B.      **The Sturge-Weber Foundation ("SWF") and
Its Application for Inclusion in the 2006 CFC**

SWF is a non-profit, charitable corporation exempt from federal income taxes as an organization described in Internal Revenue Code § 501(c)(3). The SWF exists to serve individuals with Port Wine Stains, Sturge-Weber Syndrome, and Klippel-Trenaunay Syndrome. Its mission is to provide education and support for these individuals and facilitate the necessary research to discover improved treatments and a cure. To accomplish these goals, SWF engages in a variety of educational and supportive programs and provides funding for research. (Complaint, ¶ 5.)

Health and Medical Research Charities of America (hereafter referred to as "HMR") is a tax-exempt, federated group which represents charitable organizations that work to improve health, assist care givers and find cures. HMR organizes and prepares its member charities for effective participation in at-work employee charitable fund drives and other types of fund raising activities. HMR engages in fund drive application assistance, reviews and certifies charitable agency eligibility documentation, disseminates information about its member charities to the workplace-giving public, organizes member participation in fund drive promotional educational events, represents its members before fund drive organizing or regulatory authorities, and transmits contributions and contributors' names and addresses to recipient charities. HMR is an Office of Personnel Management approved national federation eligible to participate in the 2006 CFC on behalf of its member organizations. (Complaint, ¶ 6.)[4]

---

[4] Generally, approved national federations such as HMR, which are eligible to participate in the CFC on behalf of their member organizations, submit annually to OPM lists of their members eligible to participate in a particular CFC. The individual members do not submit formal applications to participate in the particular CFC unless OPM so requests.

On or about January 27, 2006, HMR submitted its list of eligible member organizations certified for participation in the 2006 CFC. SWF was included among the eligible member organizations. In its application, SWF described in detail activities undertaken in nineteen states. *See* Exhibit "A"attached to the Complaint. HMR submitted a copy of SWF's Attachment A along with its 2006 CFC application on the required OPM form. Attachment A described SWF's services, benefits, assistance and program activities undertaken throughout the United States. SWF described how it held community fundraiser/awareness events, speeches, discussions of research, informational events, seminars, dissemination of information about the disease, and training residents. (Complaint, ¶ 13.)

Nevertheless, on April 24, 2006, the Defendant denied SWF's application for inclusion in the 2006 CFC, stating, in pertinent part: SWF "did not include sufficient information to support a claim that it provided or conducted real services, benefits, assistance, or program activities in 15 or more states over the tree-year period immediately preceding January 2006." (Complaint, ¶ 14).

By letter dated May 3, 2006, Cindy Schneible, President of HMR appealed the initial denial of SWF's application to participate in the 2006 CFC. Ms. Schneible asserted that OPM conducted an incomplete review of the documentation, that it inaccurately read Memo 2004-10, that OPM's denial of SWF was based on an inconsistent and arbitrary review of the federation's submitted documentation, and that OPM had approved a previous application of SWF containing substantially similar services.

By letter dated July 17, 2006, the Defendant, through OPM Deputy Director Blair, sustained the decision to deny SWF's application. Blair stated in pertinent part:

> The Sturge-Weber Foundation is denied because the description of some of the activities set forth in its Attachment A are not considered to constitute real services, benefits , assistance of program activities. As an example, services claimed in Hawaii are "a local family held yard sale and distributed information." Raising funds may assist the organization to accomplish its mission, but the application fails to demonstrate that the applicant organization provided services or benefits in that state. Mere dissemination of information and publications is not considered a real services and does not meet the national eligibility criteria, which is set forth by regulation at 5 CFR 950.202(a) and are further explained in CFC Memorandum 2004-10. Service in the following states was similarly discounted: Illinois; Louisiana; Utah; Virginia; and Washington. Services claimed in Florida and Wisconsin feature publicity for the organization but do not clearly demonstrate real services provided by the organization. Whether an application has been accepted in a prior year is not relevant to each annual eligibility determination, and particularly so in this case as the 2005 CFC application was not reviewed by OPM but was the subject of a federation certification of eligibility.

Complaint, ¶16.

5 C.F.R. §§ 950.102(c) and 950.205(f) provide that "[t]he Director's decision is final for administrative purposes.

## II.  SWF IS ENTITLED TO INJUNCTIVE RELIEF

### A.  Standards For Granting Preliminary Injunctive Relief

SWF is entitled to preliminary injunctive relief if it demonstrates (i) a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable injury if the requested relief is not granted; (iii) no other parties will be harmed if temporary relief is granted; and (iv) issuance of the injunction will serve the public interest. *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F. 2d 921, 925 (D.C. Cir. 1958); *Washington Metropolitan Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Serono Laboratories, Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998).

SWF is not required to prevail on each of these factors.  Under *Holiday Tours*, these factors must be viewed as a continuum, with the presence of more than one factor compensating

for less of another.  "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Cityfed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).  A court may issue an injunction "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id.*  Thus, preliminary injunctive relief may issue "with either a high probability of success and some injury or vice versa." *Cuomo v. United States Nuclear Regulatory Commission*, 772 F.2d 972, 974 (D.C. Cir. 1985).

  **B.**  **There Is A Substantial Likelihood SWF Will Prevail On The Merits**

In this action, SWF appeals from an informal agency adjudication reviewable under § 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

 Pursuant to § 706 of the APA, informal agency action must be set aside "if it fails to meet statutory, procedural or constitutional requirements or if it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...'"  5 U.S.C. § 706(2)(A); *Olenhouse v. Commodity Credit Corporation*, 42 F.3d 1560 (10th Cir. 1994) quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413-14 (1971).  A reviewing court, in applying the "arbitrary or capricious" standard, asks whether the agency engaged in reasoned decision making.  *Clifton Power Corp. v. F.E.R.C.*, 88 F.3d 1258 (D.C. Cir. 1996); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

    1. <u>Defendant's Denial of SWF's Application Abridges Its First Amendment Rights</u>

Charitable solicitation of federal employees through participation in the CFC is protected by the First Amendment.  *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788 (1985).

> The brief statements in the CFC literature directly advance the speaker's interest in informing readers about its existence and goals. Moreover, an employee's contribution in response to a request for funds functions as a general expression of support for the recipient and its views...[T]he CFC literature facilitates the dissemination of views and ideas by directing employees to the soliciting agency to obtain more extensive information...Finally, without the funds obtained from solicitation in various fora, the organization's continuing ability to communicate its ideas and goals may be jeopardized....Thus, the nexus between solicitation and the communication of information and advocacy of causes is present in the CFC as in other contexts.

*Id.* at 3447.

In *NAACP Legal Defense and Educational Fund, Inc. v. Campbell*, 504 F. Supp. 1365 (1981), two charities challenged their exclusion from the CFC. The Manual on Fund-Raising Within the Federal Service for Voluntary Health and Welfare Agencies ("Manual")[5] stated that "[o]nly nonprofit, tax-exempt charitable organizations, supported by voluntary contributions from the general public and providing direct services to persons in the fields of health and welfare services are eligible for approval."

The defendant contended the charities were not eligible to participate in the CFC because they served as legal advocates for groups but did not provide "direct services" to persons such as providing legal representation for individuals unable to afford the cost of retaining private attorneys. The court found that the "direct services" requirement did not meet First Amendment standards. The term was not defined "and the term [direct services] standing alone, is too vague to comport with the strict standards of specificity required when limits are placed on First Amendment activity." *Id.* at 1367. No established standards existed that would guide the government in determining whether an organization provided "direct services." The "direct

---

[5]The Manual predated the current CFC regulations found at 5 CFR Part 950.

services" requirement did not have "the precision necessary to comport with constitutional requirements." *Id.* at 1368.

Similarly, the requirement that eligible CFC national list participants must demonstrate they provide or conduct "real" or "actual" services, benefits, assistance or program activities is similarly vague because the terms "real" or "actual" services, benefits, assistance or program activities are not defined in the regulations. What constitutes "real" or "actual" conduct is capable of subjective determinations without the necessary specificity to permit applicants to conform their conduct to qualifying standards.

There is no dispute that in nineteen (19) states SWF actively promotes education and awareness regarding various diseases. In *more than* fifteen (15) states across the country SWF has members, recruits members, disseminates educational materials, holds and participates in disease related educational programs, and otherwise seeks to educate the public concerning kidney disease.

SWF listed in Attachment A to its 2006 CFC application the states where these activities and services occurred. SWF provided detailed information in its application with regard to the activities described above. Yet, Defendant arbitrarily determined that SWF's detailed description of its activities was insufficient because "the applicant has claimed services in states for which it had only provided educational materials about the organization's work. Mere dissemination of information and publications is not considered a real service and does not meet the national eligibility criteria."

Without a precise definition of "real" or "actual" in the regulations, SWF could not possibly foresee what constitutes a sufficiently "real" or "actual" service to qualify for

9

participation in the CFC. Neither could SWF conform its actions to such imprecise standards. Because the regulations are vague as to what qualifies as "real" or "actual" benefits or services to be conducted in each of the 15 states, the regulations Defendant relied upon violate the First Amendment.

        2.    <u>Defendant's Denial of SWF's 2006 CFC Application Was Arbitrary and Capricious</u>

Under the "arbitrary or capricious" standard, the court reviews an agency's decision making process and determines whether the agency examined "the relevant data and articulate[d] a satisfactory explanation for its action *including a rational connection between the facts found and the choice made.*" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (emphasis added.); *Touris Records, Inc. v. Drug Enforcement Administration*, 259 F.3d 731 (D.C. Cir. 2001). Agency action will be set aside "if the agency relied on factors which Congress has not intended for it to consider, entirely failed to consider an important aspect of the problem, *offered an explanation for its decision that runs counter to the evidence before the agency,* or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Manufacturers,* 463 U.S. at 43 (emphasis added).

The grounds upon which the agency made its decision must be clearly articulated and a reasoned explanation for its action must appear in the record. "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Id.* at 50. The court is required to conduct a plenary review of the record to ascertain whether the agency's action is sustained by the record and supported by "substantial evidence." *Association of Data Processing v. Board of Governors,* 745 F. 2d 677, 683-84 (D.C. Cir. 1984). The agency's decision, therefore, must be supported by facts found in the record.

> "When the arbitrary or capricious standard is performing that function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test [applicable to formal adjudication under §706(2)(E)], since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense."

Id. at 683. (emphasis in original.)

The Director has acted without authority and in an arbitrary and capricious manner in rejecting SWF's application for inclusion in the 2006 CFC. In her July 17, 2006 letter, the Director rejected SWF's 2006 CFC application stating:

> The Sturge-Weber Foundation is denied because the description of some of the activities set forth in its Attachment A are not considered to constitute real services, benefits, assistance of program activities. As an example, services claimed in Hawaii are "a local family held yard sale and distributed information." Raising funds may assist the organization to accomplish its mission, but the application fails to demonstrate that the applicant organization provided services or benefits in that state. Mere dissemination of information and publications is not considered a real services and does not meet the national eligibility criteria, which is set forth by regulation at 5 CFR 950.202(a) and are further explained in CFC Memorandum 2004-10. Service in the following states was similarly discounted: Illinois; Louisiana; Utah; Virginia; and Washington. Services claimed in Florida and Wisconsin feature publicity for the organization but do not clearly demonstrate real services provided by the organization. Whether an application has been accepted in a prior year is not relevant to each annual eligibility determination, and particularly so in this case as the 2005 CFC application was not reviewed by OPM but was the subject of a federation certification of eligibility.

SWF provided extensive and detailed information about its purposes and activities to defendant in its 2006 CFC application. Attachment A to its 2006 CFC application identified the states where SWF provides extensive information and services to the public about kidney disease. SWF described in more than ample detail its activities in each state. SWF demonstrated conclusively that it conducted "real services, benefits, assistance or program activities" in *at least* 15 states during the previous three year period. *See* Exhibit A to the Complaint.

Thus, defendant's rationale for denying SWF's application, *viz.*, that "the applicant has

11

claimed services in states for which it had only provided educational materials about the organization's work. Mere dissemination of information and publications is not considered a real service and does not meet the national eligibility criteria." inexplicably ignores the detailed description of activities provided in SWF's Attachment A.

Moreover, OPM's denial of SWF's form of distribution of materials is inconsistent with OPM's own instructions and prior approvals of other charities by OPM. SWF's program details in Attachment A are substantially similarly, although descied in less detail in SWF's 2005 Attachment A, which was accepted to the CFC. *See* Exhibit "E" to the Complaint. In 2005, SWF was not affiliated with HMR and filed its application with OPM as an unaffiliated charity.

Defendant's decision, therefore, was arbitrary and capricious. SWF submits there is a substantial likelihood it will succeed on the merits.

        C.       **SWF Will Suffer Irreparable Injury If Preliminary Injunctive Relief Is Not Granted**

The Director will distribute the National List to LFCCS on or about July 31, 2006. *See* CFC schedule attached as Exhibit I to the complaint. The issuance date of the National List for the 2006 CFC is imminent. Additionally, SWF was given only days to respond to the denial of its appeal. Despite receiving SWF's appeal on or about May 4, 2006, OPM did not respond until the letter of July 17, 2006, which was received on July 24, 2006, shortly before the National List is finalized. This gives SWF only a short period to retain counsel and prepare pleadings, resulting in significant hardship to SWF.

The LFCCs publish this list in a brochure which identifies participating nationally eligible charities and includes a short description of their programs and purposes. The brochures provide essential information relied upon by federal employees in deciding which

charities to support through direct contributions and payroll deductions.

Exclusion of SWF from the National List for the 2006 CFC will inflict substantial economic harm and other injuries which cannot be rectified for several reasons. SWF will be deprived of the exercise of its First Amendment right to communicate its message to millions of federal employees who otherwise would not have the opportunity to receive this information. Not coincidentally, SWF also will be precluded from seeking financial support for its cause during the 2006 CFC. The CFC is the exclusive means whereby federal employees may be solicited for charitable contributions in the workplace. *See, e.g.*, *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988) (injunction was issued preventing enforcement of OPM regulation preventing a national organization and one of its affiliates from simultaneously appearing on the list of eligible organizations distributed to federal employees in their local CFCs). Moreover, given the large number of federal employees located in every state and abroad, SWF cannot solicit contributions directly from this same audience without incurring exorbitant costs.

Finally, SWF cannot recover from the government the amount of contributions it will not receive as a result of the Defendant's action. In addition to the loss being difficult, if not impossible to quantify, SWF has no remedy at law as the result of the federal government's immunity from damages for these types of suits. *See, e.g.*, *Woerner v. United States Small Business Administration*, 739 F. Supp. 641 (D.D.C. 1990).

The losses described herein are real, immediate and irretrievable absent preliminary injunctive relief.

**D.     Third Parties Will Not Suffer Harm If Preliminary Injunctive Relief Is Granted**

No other parties will suffer harm if the relief requested by SWF is granted. The list of national organizations eligible to participate in the CFC easily can be updated and revised by the Director to include SWF and be distributed to the local LFCCs *via* OPM's web site. The brochures have yet to be printed and distributed, so no additional expenses for reprinting the brochures need be incurred. Moreover, other eligible charitable organizations participating in the CFC will not be harmed because the 2006 CFC has yet to begin. For these reasons, no harm will occur to other parties if preliminary injunctive relief is granted.

### E. Grant of Preliminary Injunctive Relief Will Serve The Public Interest

The public interest is undoubtedly served by SWF's participation in the CFC. Inclusion of SWF in the 2006 CFC permits millions of federal employees to learn of the organization, to receive its message, and to make donations to permit the organization to continue to carry out its charitable activities. If the requested preliminary injunctive relief is granted, SWF's participation in the CFC will guarantee that SWF may continue its activities and services.

Moreover, "there is a strong public interest in meticulous compliance with law by public officials." *Fund for Animals v. Espy*, 814 F. Supp. 142, 152 (D.D.C. 1993). In the instant action, the Defendant's arbitrary denial of SWF's application was based on vague and imprecise standards and on reasons not supported by the record.

Therefore, the public interest will be served by granting the requested preliminary injunctive relief.

### III. CONCLUSION

For the reasons stated herein, SWF respectfully requests this court to order the requested preliminary injunctive relief.

Respectfully submitted,

Sturge-Weber Foundation
By Counsel


/s/_____
Bernard J. DiMuro, Esq. (D.C. Bar #929406)
DIMURO GINSBERG, P.C.
908 King Street, Suite 200
Alexandria, Virginia 22314
(703) 684-4333
(703) 548-3181 (facsimile)

Noland MacKenzie Canter, III (D.C. Bar #93616)
Mark J. Diskin (D.C. Bar #334086)
Copilevitz & Canter, LLC
1900 L Street, N.W., Suite 215
Washington, D.C. 20036

*Counsel for Plaintiff*